William L. Wolf
Texas State Bar No. 21854500
Craig P. Henderson
Texas State Bar No. 09420410
William L. Wolf, P.C.
5949 Sherry Lane, Suite 550
Dallas, Texas 75225
Telephone: (214) 750-1395
Facsimile: (214) 368-1395

ATTORNEYS FOR VICTOR ENTERPRISES, INC.

## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **CEDAR SPRINGS BUILDING** | § | **CASE NO. 09-36705** |
| **MANAGEMENT, LTD.,** | § | |
| | § | |
| **Debtor.** | § | |

## OBJECTIONS OF VICTOR ENTERPRISES, INC. TO DEBTOR'S
## FIRST AMENDED PLAN OF REORGANIZATION

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

COMES NOW, Victor Enterprises, Inc. ("VEI"), a creditor in the above-styled and numbered cause, and submits the following objections to the confirmation of Debtor's First Amended Plan of Reorganization filed by Cedar Springs Building Management, Ltd. ("Debtor"), and would respectfully show the Court as follows:

### I.     Introduction

1.     On October 5, 2009, Cedar Springs Building Management, Ltd ("Debtor") filed a voluntary petition for relief (the "Petition") under Chapter 11 of Title 11 of the United States Bankruptcy Code (the "Bankruptcy Code").

2.     Debtor filed Debtor's First Amended Plan of Reorganization dated February 24, 2010 with this Court on February 24, 2010 (the "Amended Plan").

3.    In connection with the Amended Plan, Debtor filed Debtor's First Amended Disclosure Statement for Debtor's Plan of Reorganization dated February 24, 2010 with this Court on February 24, 2010 (the "Amended Disclosure Statement").

4.    VEI is a secured creditor of Debtor and, as such, hereby files its objections to the Amended Plan.  In addition, VEI has rejected the Amended Plan in the Class 2 Ballot and the Amended Plan cannot be confirmed under 11 U.S.C. § 1129(a) without the vote of VEI because VEI is the holder of at least two-thirds (2/3) in dollar amount of the allowed claims in the class of secured creditors.

5.    In Section III.C.1 of the Amended Disclosure Statement, Debtor lists the secured claim of VEI in the amount of $751,194.94 (the "VEI Claim"), and provides the following relevant treatment of the VEI Claim: original note and all applicable guaranties, deed of trust, and assignment of rents are to be reinstated with principal amount of $751,194.94 at the non-default rate and other non-default terms; $100,000 reduction of principal on the first day of the month following the effective date; monthly payments of $6,281.30 to commence on the first day following the effective date (the "VEI Payment"), the existing MA lease and payables will be novated into a new lease, the existing assignment of rents will apply to the new MA lease, and the Court's order concerning rents will be terminated on the effective date.

6.    In addition, in Section III.C.1, Debtor lists the first priority secured claim of Melissa Properties, Inc. in the amount of $440,119.09 (the "Melissa Claim"), for which Debtor proposes to make 120 monthly payments of principal and interest of $7,657.15 with an interest rate of 18 percent, the non-default original notes rate, under the Amended Plan (the "Melissa Payment").  Debtor also lists the third priority secured claim of the Small Business Administration in the amount of $438,499.12 (the "SBA Claim"), for which Debtor proposes to make monthly payments of $3,937.76

under the Amended Plan (the "SBA Payment").

7.      In order to confirm a plan under Chapter 11 of the Bankruptcy Code, the plan must be, among other things, proposed in good faith, feasible such that confirmation of the plan is not likely to be followed by liquidation or the need for further financial reorganization, and fair and equitable to creditors. 11 U.S.C. § 1129(a)(3), (a)(11), (b)(2).

**II.**      **Factual Background**

8.      Debtor had executed and delivered a promissory note payable to Parkway Bank, N.A., now known as Fidelity Bank ("Lender"), in the original principal amount of $740,000.00 (the "Parkway Note"), which was renewed on January 26, 2003 extending the maturity date of the Parkway Note (the "Modification"). Under the Parkway Note, the interest rate was set at 6.75% per annum, and the interest rate for all matured unpaid amounts was set at 18% per annum (the "Maturity Rate"), which such interest rates remained the same in the Modification. In connection with the Note, Debtor executed as grantor for the benefit of Lender a Renewal and Extension Commercial Deed of Trust, Security Agreement, Financing Statement and Assignment of Rents dated August 29, 2002, which encumbers certain real and personal property (the "Property") located in Dallas County, Texas (the "Deed of Trust"). Debtor defaulted under the Parkway Note, which notice of default was sent to Debtor on or about June 20, 2008, and all amounts due and owing under the Parkway Note were accelerated on or about April 2, 2009 due to Debtor's failure to cure such default. Through a Transfer of Lien and Assignment of Note, Loan Documents, Liens and Security Instruments dated July 7, 2009, the Parkway Note was transferred and assigned to VEI.

9.      In conjunction with the Parkway Note, on or about August 29, 2002, Majorie and Associates, a Professional Corporation ("Majorie PC"), and Francis B. Majorie ("Majorie") (collectively, the "Guarantors") executed two (2) separate agreements whereby they unconditionally

guaranteed the prompt payment and/or performance of the Parkway Note (the "Guaranties"). Under the Guaranties, should the maturity of the indebtedness of Debtor under the Parkway Note be accelerated, which occurred on or about April 2, 2009, the Guarantors promised to pay the amount due and unpaid by Debtor.

10.     By letter dated August 31, 2009 from VEI to Debtor, VEI agreed to postpone the foreclosure sale on the Property scheduled for September 1, 2009, at the request of Debtor, so long as Debtor confirmed certain agreements and paid $5,000.00 in good funds to VEI as a forbearance payment (the "Forbearance Letter"). Debtor executed the Forbearance Letter and paid the $5,000.00 to VEI as required by its terms.

11.     Debtor executed the Forbearance Letter, thereby agreeing and confirming to VEI that it had defaulted under the Loan Documents, proper Notice of Default was given to Debtor, one or more defaults remained uncured as of April 2, 2009, the indebtedness under the Parkway Note was properly accelerated, and the indebtedness was fully due and payable to VEI. In the Forbearance Letter, Debtor further agreed that the principal balance due and owing as of August 31, 2009 was $683,678.17, with the total amount due and owing including interest at 18% from 4/2/09 through 8/31/09, late charges, and attorneys' fees being $746,075.16 (the "Note Amount"), and that all such amounts, including the per diem interest rate of $337.15 per day (the "Agreed Per Diem Amount"), were true and correct as stated in the Forbearance Letter. Debtor also agreed that the Parkway Note shall continue to accrue interest at the Agreed Per Diem Amount until paid by Debtor. Finally, Debtor agreed that all amounts stated in the Forbearance Letter were due and payable to VEI and that Debtor had no defenses, claims and/or counterclaims with respect to the Note Amount. Despite such Forbearance Letter agreed to by Debtor, the amount of the VEI Claim and the non-default rate proposed in the Amended Plan are inconsistent with the terms of the Forbearance Letter, under

which the Note Amount has continued to accrue interest at the Agreed Per Diem Amount, such that

the Amended Plan is lacking in fairness and equity as to VEI and violates applicable bankruptcy law.

### III. The Amended Plan Proposed by Debtor is Not Feasible Pursuant to 11 U.S.C. § 1129(a)(11).

12.     Section 1129(a)(11) of the Bankruptcy Code requires that the plan be feasible such

that it is not likely to be followed by liquidation or the need for further reorganization of the debtor.

11 U.S.C. § 1129(a)(11). This test requires the Court to determine whether the proposed plan is

workable and has a reasonable likelihood of success. *In re Idearc, Inc.*, 432 B.R. 138, 167 (Bankr.

N.D. Tex. 2009). While the plan need not guarantee success, the court must find a reasonable

assurance of commercial viability and a probability of success. *In re Briscoe Enters., Ltd. II*, 994

F.2d 1160, 1165-66 (5th Cir. 1993). The debtor must present proof, through reasonable projections,

that there will be sufficient cash flow in order to fund the plan as proposed and such objections

cannot be merely speculative or simply unrealistic. *In re Idearc, Inc.*, 432 B.R. at 167.

13.     VEI has filed a petition in Collin County, Texas against the Guarantors seeking a

judgment against the Guarantors for the amount of the unpaid indebtedness of Debtor pursuant to the

Parkway Note, for which the Guarantors absolutely and unconditionally guaranteed prompt payment

and/or performance of such indebtedness of Debtor to Lender, now VEI, under the Guaranties (the

"State Suit"). Such amount of unpaid indebtedness includes the Note Amount agreed to by Debtor in

the Forbearance Letter as of August 31, 2009, plus all accrued interest, attorneys' fees, and other

costs and expenses due and payable to VEI under the Parkway Note which accrued or became due

and payable after August 31, 2009.

14.     Debtor is a single asset real estate entity. Debtor owns the real property located at

3514 Cedar Springs Road, Dallas, Texas 75219 (the "Building"). The general partner of Debtor is

LOMC, Inc. ("LOMC"), an entity wholly owned by Majorie, who is also the sole limited partner of Debtor. Majorie is the owner of Majorie PC, a law firm. Majorie PC allegedly entered into a ten (10) year lease with Debtor for the Building (the "Old Lease") with a maturity date of December 31, 2010 and an annual rental rate of $240,000 per year. Pursuant to the Amended Plan, Debtor proposes, on the Effective Date as described therein, to execute a new lease for the term of fifteen (15) years at the rate of $18,500 per month (the "New Lease") and novate the Old Lease and related receivable into that transaction. Under both the existing Old Lease and the proposed New Lease, Majorie PC is the sole tenant of the Building, where it maintains its law firm offices. Thus, Debtor conducts no other business with respect to the Building besides the Old Lease, currently, and the New Lease, prospectively, and rent for the Building from Majorie PC is the sole income of Debtor.

15. Because Majorie PC is the sole tenant of Debtor, and because Majorie is the sole owner of Majorie PC, as well as the president of the general partner of Debtor, LOMC, and the sole limited partner of Debtor, the condition of the Debtor is necessarily dependent on the present and likely future financial condition of both Majorie PC and Majorie individually. Pursuant to the State Suit, VEI seeks a judgment against Majorie PC and Majorie in an amount in excess of the Proof of Claim Amount, plus accrued interest, attorneys' fees, and other costs and expenses since the filing of the Proof of Claim, which includes the Note Amount unequivocally agreed to by Debtor as due and owing under the Parkway Note to VEI pursuant to the Forbearance Letter.

16. In the Amended Disclosure Statement, Debtor sets forth the means of implementing the Amended Plan as follows: Majorie PC will pay $114,000 to Debtor and execute the New Lease at the rate of $18,500 per month, plus the obligation to pay utilities, taxes, and insurance, $100,000 of those funds will be used to pay principal on the Parkway Note to reduce the VEI Claim, the remaining funds will be used to pay unsecured creditors, and the New Lease will provide sufficient

cash to pay the Debtor's debts as they become due after reorganization. At the closing of the Amended Plan, Majorie PC will pay $169,000, $100,000 of which will be applied to reduce the VEI Claim and $55,000 of which will be held by Debtor for the payment of the first three months of debt service under the Amended Plan. Therefore, pursuant to the Amended Disclosure Statement, payments by Majorie PC both at the closing of the plan and each month under the New Lease, are the sole means of funding the Amended Plan proposed by Debtor such that, without those funds, there is no cash flow by which to fund the Amended Plan.

17.     Moreover, Debtor provides that the monthly rent due by Majorie PC to Debtor under the New Lease will be in the amount of $18,500. The monthly rent of $18,500 to be paid by Majorie PC to Debtor under the New Lease will serve as the Debtor's sole income as a single asset real estate entity with Majorie PC as its only tenant. Out of that $18,500 monthly payment, the Melissa Payment will be in the monthly amount of $7,657.17, the VEI Payment will be in the monthly amount of $6,281.30, and the SBA Payment will be in the monthly amount of $3,937.76 under the Amended Plan. Thus, the total amount of the monthly payments of the Melissa Payment, the VEI Payment, and the SBA Payment is $17,876.23, such that Debtor will have only $623.77 left over each month from the $18,500 paid by Majorie PC under the New Lease to pay all other monthly payments for the Building, including utilities, taxes, insurance, and other administrative expenses. Therefore, because the amount of monthly rent under the New Lease (if timely paid by Majorie PC each month) and the amount of monthly payments proposed to be paid by Debtor to fund the Amended Plan share such a small difference, there is a great risk that the monthly rent amount to be paid by Majorie PC under the New Lease will not be enough for Debtor to fund the Amended Plan *and* cover taxes, insurance, utilities, and any additional expenses related to the Building such that the Amended Plan does not appear workable or have a likelihood of success.

18.     Moreover, if VEI is successful in the State Suit and obtains a judgment against Majorie PC and Majorie for the Note Amount plus accrued interest, attorneys' fees, and other costs and expenses in excess of $800,000, which is likely considering the Guarantors unconditionally guaranteed the prompt payment and/or performance of any indebtedness of Debtor under the Parkway Note, Majorie PC, the sole tenant of Debtor under both the existing Old Lease and the proposed New Lease will be liable to VEI for such amount and will not have the funds necessary to pay the monthly rent due under the New Lease. In addition, Majorie, the sole owner of Majorie PC, as well as the president of LOMC and the sole limited partner of Debtor, will be liable to VEI for such amount such that Majorie will not be able to provide funds to Majorie PC to pay the monthly rent amount to Debtor under the New Lease. Thus, there will be no cash flow by which to fund the Amended Plan such that the Amended Plan does not have a probability of success.

19.     Therefore, because the Guarantors have unconditionally guaranteed and thus are liable to VEI for the Note Amount owed by Debtor to VEI, plus accrued interest, attorneys' fees, and other costs and expenses, for which VEI has brought suit in the State Suit, the Guarantors, including Majorie PC as the sole tenant and source of income of Debtor under the Amended Plan, will not have the funds available to make the monthly payment under the New Lease such that the Amended Plan is not feasible as required by 11 U.S.C. § 1129(a)(11) in order to be confirmed.

20.     Also, in the Amended Disclosure Statement, Debtor discloses that, under the Old Lease which has an annual rental rate of $240,000, annual rent was not paid each year by Majorie PC such that an MA account receivable was booked representing the difference between the $240,000 annual rent amount and the amounts of cash actually paid by Majorie PC through the date of the calculations. Debtor also discloses in the Amended Disclosure Statement that the total amount of the MA account receivable as of December 31, 2009 was $703,852. Considering Debtor's practice in

the past of not enforcing the Old Lease and not collecting rents on a monthly or even annual basis from Majorie PC, there is a reasonable probability that such practice could repeat itself under the New Lease proposed by Debtor in the Amended Plan. This eventuality is made much more likely by the State Suit where VEI is seeking a judgment against the Guarantors in excess of $800,000, which would leave Majorie PC (as well as Majorie) without the funds to pay the monthly rental amount proposed under the New Lease. Because such monthly rent to be paid by Majorie PC under the New Lease is the sole income of Debtor as a single asset real estate entity, Majorie PC's inability to pay such monthly rent amount would leave Debtor without any funds to operate the Building or to fund the proposed Amended Plan.

21.     Therefore, the Amended Plan is not feasible pursuant to 11 U.S.C. § 1129(a)(11), including, for the following reasons: Debtor has no capital, Debtor is a single asset real estate entity and has earnings only from rent from an affiliate (Majorie PC) with no history of paying rent in accordance with its lease and no individual guarantor of that lease, the poor economic conditions, and the State Suit against the Guarantors, affiliates of Debtor, for which VEI seeks a judgment against the Guarantors in an amount in excess of the Note Amount pursuant to the Guaranties such that Majorie PC will not have the funds to make the monthly rent payment to Debtor under the New Lease, which is the sole means of funding the Amended Plan. Therefore, the Amended Plan is not feasible such that it is likely to be followed by liquidation or the need for further financial reorganization.

## IV.     The Amended Plan is so Lacking in Fairness and Equity Such That it Cannot be Confirmed Pursuant to 11 U.S.C. § 1129(b)(2)(A).

22.     If the requirements of 11 U.S.C. § 1129(a) have been met, which VEI contends the Amended Plan does not meet the requirements of 11 U.S.C. § 1129(a), a plan may be confirmed over

the objection of dissenting creditors only if it meets the requirements of § 1129(b), which requires that the plan is fair and equitable and does not discriminate amongst the creditors. 11 U.S.C. § 1129(b). In order to perform a cramdown under 11 U.S.C. § 1129(b)(2), the secured creditor must either (i) retain its lien in the collateral to the extent of the allowed amount of the secured claim and receive deferred cash payments totaling at least the allowed amount of such claim, as value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property, or (ii) realize the indubitable equivalent of its claim. 11 U.S.C. § 1129(b)(2)(A). However, the Debtor must first request a cramdown and has not done so. The debtor has the burden of proof to show that it is providing an equitable rate of return to creditors in order to meet the fair and equitable requirements of 11 U.S.C. § 1129(b), which the Debtor has not met in regard to the Amended Plan. In addition to not meeting the requirements of 11 U.S.C. § 1129(a), the Amended Plan is not fair and equitable pursuant to 11 U.S.C. § 1129(b) such that it cannot be confirmed as a matter of law.

    a.   <u>The Interest Rate for the VEI Claim Should be the Contract Rate of 18% Pursuant to the Forbearance Letter Executed by Debtor or, In the Alternative, Be Set at the Maturity Rate in the Parkway Note or Some Other Rate Calculated by this Court to Include VEI's Increased Risk of Loss, Such that the Amount of the VEI Claim and the Non-Default Rate of the VEI Claim Proposed in the Amended Plan Are Unfair and Inequitable as to VEI and Violate Applicable Bankruptcy Law.</u>

    23.    A Chapter 11 plan can be confirmed only if it is considered to be fair and equitable with respect to each class of claims. 11 U.S.C. § 1129(b)(2). Thus, in order to confirm a plan, the debtor must show the plan does not discriminate unfairly and is fair and equitable with respect to each class of claims and equity interests that are impaired. *In re Idearc, Inc.*, 432 B.R. at 169. The Amended Plan proposed by Debtor is so lacking in fairness and equity that it could not possibly be confirmed under 11 U.S.C. § 1129(b)(2)(A).

    24.    First, the assertion that Melissa Properties, Inc. has a first priority lien is not supported

by any facts and Debtor has offered no proof of the basis for such assertion and how the alleged amount owed to Melissa Properties, Inc. was derived. Therefore, VEI objects to the position of Melissa Properties, Inc. as a first priority lien under the Amended Plan because Debtor has no offered no proof for such priority. Debtor cannot properly adjudicate the Melissa Claim as a first priority secured claim and alter the position of the VEI Claim by way of the Amended Plan without any factual basis or proof of such priority.

25. Debtor executed the Forbearance Letter, thereby agreeing and confirming to VEI that it had defaulted under the Loan Documents, proper Notice of Default was given to Debtor, one or more defaults remained uncured as of April 2, 2009, the indebtedness under the Parkway Note was properly accelerated, and the indebtedness was fully due and payable to VEI. In the Forbearance Letter, Debtor further agreed that the principal balance due and owing as of August 31, 2009 was the Note Amount, that all such amounts, including the Agreed Per Diem Amount, were true and correct as stated in the Forbearance Letter, that the Parkway Note shall continue to accrue interest at the Agreed Per Diem Amount until paid by Debtor, and that all amounts stated in the Forbearance Letter were due and payable to VEI such that Debtor had no defenses, claims and/or counterclaims with respect to the Note Amount. Despite such Forbearance Letter agreed to by Debtor, the amount of the VEI Claim and the non-default rate proposed in the Amended Plan are inconsistent with the terms of the Forbearance Letter, under which the Note Amount has continued to accrue interest at the Agreed Per Diem Amount, such that the Amended Plan is lacking in fairness and equity as to VEI and violates applicable bankruptcy law.

26. Debtor cannot attempt to "reinstate" the original note and all applicable guaranties, deed of trust, and assignment of rents *and* seek to apply the non-default rate to the VEI Claim in the Amended Plan. Reinstatement necessarily implies reinstating the original note and relevant

documents at the maturity interest rate due to the borrower's default and resulting acceleration by the lender in order to protect the creditor against risk of loss. Also, the Amended Plan does not state when the VEI Claim matures and is fully due and payable. Therefore, VEI objects to Debtor attempting to reinstate the original note and all applicable guaranties, deed of trust, and assignment of rents while also seeking to apply the non-default rate to the VEI Claim as proposed in the Amended Plan.

27. Next, VEI filed with this Court its Proof of Claim of Creditor Victor Enterprises, Inc. dated February 5, 2010 (the "Proof of Claim"). In the Proof of Claim, VEI stated the total amount claimed by VEI against Debtor as of the date of filing was $806,631.86 (the "Proof of Claim Amount"), which such Proof of Claim Amount has increased since February 5, 2010 due to interest accruing at the Agreed Per Diem Amount and additional attorneys' fees incurred by VEI. The Proof of Claim Amount was calculated based on the Note Amount agreed to by Debtor in the Forbearance Letter as of August 31, 2009 and the Agreed Per Diem Amount in the Forbearance Letter, without reference to any non-default or default interest rate, with additional attorneys' fees incurred by VEI since the date of the Forbearance Letter. Thus, even though Debtor agreed to the Note Amount and the Agreed Per Diem Amount in the Forbearance Letter, waiving all defenses, claims, and/or counterclaims with respect to the Note Amount, the amount of the VEI Claim in the Amended Plan is less than the Proof of Claim Amount, which such amount has increased since the day of filing due to accrued interest and attorneys' fees, filed by VEI based on such Forbearance Letter and does not reflect Debtor's agreement in the Forbearance Letter that the Parkway Note shall continue to accrue interest at the Agreed Per Diem Amount until paid by Debtor.

28. Also, the secured claim of VEI is more than what is set forth in the Amended Plan, and hence the deferred payments under the Amended Plan have a present value, as of the effective

date of the Amended Plan, less than the VEI Claim set forth in the Amended Plan, which violates applicable bankruptcy law. In addition, the Small Business Administration is paid more than its allowed claim pursuant to the SBA Claim, especially since the value of the Debtor's real property as proposed by Debtor is higher than its actual fair market value, such that the Amended Plan is not fair and equitable as to VEI.

29. Furthermore, pursuant to Section 506(b) of the Bankruptcy Code, to the extent an allowed secured claim is secured by property the value of which is greater than the amount of such claim, the holder is entitled to interest on such claim. 11 U.S.C. § 506(b). Where an oversecured claim arises from a contract extending credit to the Debtor, the contract provides the rate of post-petition interest. *In re Laymon*, 958 F.2d 72, 75 (5th Cir. 1992) (holding that, prior to the enactment of the Bankruptcy Code, the majority of courts used the contract rate of interest to determine the rate for an oversecured creditor entitled to collect post-petition interest).

30. In this case, VEI and Debtor entered into a contract, the Forbearance Letter, in which Debtor agreed that the Parkway Note was to continue to accrue interest (after August 31, 2009) at the Agreed Per Diem Amount. The Forbearance Letter is a valid and enforceable contract between VEI and Debtor whereby Debtor agrees that the interest rate for the Parkway Note is the Agreed Per Diem Amount without any reference to a non-default or default interest rate. Therefore, because it is well-established that the contract between the parties provides the post-petition interest rate to be applied to an oversecured claim, VEI is entitled to interest payments on the Parkway Note at the Agreed Per Diem Amount pursuant to the Forbearance Letter such that the Amended Plan proposing payment of the Parkway Note to VEI at the non-default rate is unfair and inequitable as to VEI.

31. In the alternative, in determining what interest rate should apply to a secured claim in the post-petition period, courts have generally held that a default interest rate is to be applied, unless

the higher rate would produce an inequitable result.  *In Re Southland Corp.*, 160 F.3d 1054, 1059-60 (5th Cir. 1998).  Accordingly, there is a presumption in favor of the default contract rate subject to equitable arguments.  *Id.* at 1060 (upholding the lower court's decision to award post-petition interest at the default rate because the bank triggered the default rate under the contract, the plan did not cure the defaults, and the default rate of interest was not inequitable).[1]

32.     Thus, in the alternative to the Court applying the Agreed Per Diem Amount to the VEI Claim, the Court is to presume that the Maturity Rate should apply and it would not be inequitable to apply the Maturity Rate to the VEI Claim in this case, especially considering that Debtor defaulted prior to the filing of the Petition such that the Parkway Note was properly accelerated by Lender, now VEI.  In fact, it would be unfair and discriminatory not to apply the Maturity Rate to the VEI Claim because Debtor proposes in the Amended Plan to make payment to Melissa Properties, Inc. under the Melissa Claim at the interest rate of 18%, which is the Maturity Rate contracted for in the Parkway Note, and the VEI Claim is alleged to be subordinate and inferior to the Melissa Claim.

33.     One of the factors in determining what interest rate should apply post-petition is whether the secured creditor faces increased risks during the bankruptcy proceeding.  *In Re Southland Corp.*, 160 F.3d at 1060.  The non-default rate provided in the Parkway Note, which Debtor proposes as the rate for the VEI Claim in the Amended Plan, was agreed to by Lender at a time when its risk of loss was relatively low and when there were no alleged superior tax liens against Debtor.  Under the Amended Plan, VEI is in an alleged second lien position with the Melissa

---

[1] Although there is no specific test to balance the equities, courts have looked to such factors as whether the junior creditors will be harmed or impaired if the default rate of interest is applied (which is considered to be the most important factor), whether the secured creditor faces increased risks during the bankruptcy proceeding, whether the spread between the non-default rate and the default rate of interest is significant, and whether the secured creditor obstructed the reorganization process.  *See id*.

Claim in the amount of over $440,000 ahead of it in the first lien position. But for the Melissa Claim, VEI would be in the first lien position such that the Melissa Claim is the very reason why VEI is in the alleged second lien position under the Amended Plan. Thus, it is only fair and equitable that VEI receive an interest rate for the VEI Claim at least as high as that of the Melissa Claim, which is set at 18%, notwithstanding the Agreed Per Diem Amount in the Forbearance Letter which should indisputably be applied to the VEI Claim.

34. In the alternative to the Court applying either the Agreed Per Diem Amount or the Maturity Rate to the VEI Claim as required under applicable bankruptcy law, this Court, in determining the proper rate to be applied to secured claims in a cramdown under Chapter 11, has conducted an analysis beginning with the formula approach and taking into account the efficient market rate adjusted for increased risk of loss such that the non-default rate proposed for the VEI Claim in the Amended Plan is wholly inadequate to satisfy § 1129(b)(2).

35. The United States Supreme Court has addressed the proper rate of interest to be applied to payments to secured creditors on a cramdown loan under a Chapter 13 plan and adopted the formula approach as the proper method for determining such interest rate. *Till v. SCS Credit Corp.*, 541 U.S. 465, 477-78 (2004). In choosing this approach, which has subsequently been applied to Chapter 11 cases, the Supreme Court recognized that, when the debt is to be discharged by a series of payments over time, a debtor's promise of future payment is worth less than the immediate payment of the same amount because the creditor cannot use the money right away, inflation may cause the value of the dollar to decline before the debtor pays, and there is always a risk of nonpayment by the debtor. *Id.* at 474. To address these concerns, the formula approach begins by looking to the national prime rate banks should charge a creditworthy commercial borrower and then adjusts the prime rate to reflect the much greater risk of nonpayment posed by

bankrupt debtors. *Id.* at 478-79.

36. Although *Till* was a Chapter 13 case, the Supreme Court referenced applying the formula rate in a Chapter 11 case in a footnote suggesting that, in a Chapter 11 case, the court would also consider what rate an efficient market would produce, such that this Court, in determining what rate should apply in a Chapter 11 case, begins its analysis with *Till* but does not necessarily apply the formula approach mechanically and includes the efficient market approach in its analysis. *In re N.W. Timberline*, 348 B.R. 412, 431-32 (Bankr. N.D. Tex. 2006); *see id.* at 476, n. 14. Thus, because there is a greater risk of default in bankruptcy, this Court has recognized that such risk much be taken into account, either in applying the formula rate or in considering what rate an efficient market might produce for the loan , such that the original non-default contract rate is wholly inadequate to protect the creditor against such risk post-petition. *See In re N.W. Timberline*, 348 B.R. at 431-32. In *In re N.W. Timberline,* this Court held that the loan at issue proved to be so risky such that there was no efficient market for the loan, and thus, the Court looked to the *Till* formula approach in concluding that a 13.75% interest rate (with a 5.75% risk adjustment included) was necessary to adequately protect the creditor's secured claim. *Id.* at 434.

37. According to this Court's own precedent, in a Chapter 11 cramdown where there is a higher risk of default by the bankrupt debtor, the Court should begin with the *Till* formula approach and take into consideration what rate an efficient market would produce in order to calculate a risk adjusted interest rate for the secured claim. As set forth above, when Lender loaned the funds to Debtor under the Parkway Note, the Lender was unquestionably in a first lien position with a much lower risk of loss such that the non-default rate provided in the Parkway Note was applied. Now, the VEI Claim is in an alleged second lien position and is subject to a much greater risk of nonpayment by Debtor such that the non-default rate provided in the Parkway Note must be adjusted to include

risk of loss and to consider what rate an efficient market would produce for the Parkway Note. Under this Court's analysis, the non-default rate proposed by Debtor to apply to the VEI Claim under the Amended Plan does not take into account any increased risk of loss to VEI or the efficient market rate such that the non-default rate is wholly inadequate and inequitable as applied to VEI.

38. Thus, under applicable bankruptcy law, the Agreed Per Diem Amount should apply to the VEI Claim because it is the contract rate agreed to by Debtor in the Forbearance Letter. In the alternative, the Maturity Rate under the Parkway Note, which is presumed to apply, should apply to the VEI Claim. Finally, even if the Court chooses not to apply the Agreed Per Diem Amount or the Maturity Rate to the VEI Claim, the Court must, under the analysis in *Till and In Re N.W. Timberline*, apply either the formula approach or consider what rate an efficient market would produce in order to calculate and adjust for risk of loss such that the non-default rate proposed by Debtor in the Amended Plan is wholly inadequate to protect VEI under 11 U.S.C. § 1129(b)(2). Therefore, because the Amended Plan proposes to apply the non-default rate to the VEI Claim, which use of by Debtor is not explained, the Amended Plan is unfair and inequitable to VEI and cannot be confirmed as a matter of law.

b. The Amended Plan Violates the Absolute Priority Rule and the Best Interest of Creditors Test.

39. The Amended Plan violates the absolute priority role in that junior classes in priority to VEI receive a distribution before the VEI Claim is satisfied in full. For example, the SBA Claim and unsecured creditors cannot be paid under the Amended Plan before the VEI Claim is satisfied in full. The Amended Plan also unfairly discriminates against VEI, including the VEI Claim, and is not fair and equitable to VEI. For example, Melissa Properties, Inc. is paid an interest rate almost three (3) times the interest rate VEI is paid, even though Debtor contends the VEI Claim is subordinate to

the Melissa Claim, such that the Amended Plan fails to meet the best interest of creditors test, including, but not limited to, with respect to the low interest rate applied to the VEI Claim.

      c.   All Rents and Income Generated From the Property Have Been Absolutely and Unconditionally Assigned to VEI and Should be Characterized as Rents in the Amended Disclosure Statement and Paid to VEI Accordingly.

40.     In conjunction with the Parkway Note, Debtor absolutely and unconditionally assigned to Lender, now VEI, all rents generated from the Property by the Assignment of Leases and Rents dated August 29, 2002 (the "Assignment of Rents") and the Deed of Trust. In accordance with such Assignment of Rents, VEI has the right, upon default and at its option, to enter the property and collect rents which are accrued but unpaid and those rents which are accruing and becoming payable thereafter. *See Taylor v. Brennan*, 621 S.W.2d 592, 594 (Tex. 1981). Therefore, upon default by Debtor under the Parkway Note, which was noticed on or about June 20, 2008, VEI had the right, and has the continuing right, to collect rents due and owing under the Lease. Because VEI holds title to any rent income of the Property under the Assignment of Rents, VEI is entitled to collect any accrued but unpaid rent and all such rents paid thereafter.

41.     In the Amended Plan, Debtor states that, in regard to the VEI Claim, the Assignment of Rents is to be reinstated. VEI's right to collect all rents which are accrued and unpaid and which continue to accrue under the Assignment of Rents was triggered by the default of Debtor under the Parkway Note such that the Assignment of Rents may not be properly reinstated pursuant to the Amended Plan. In addition, as stated above, Debtor cannot attempt to reinstate the Assignment of Rents and also attempt to apply the non-default rate to the VEI Claim in the Amended Plan because reinstatement necessarily implies applying the default or maturity interest rate. Thus, VEI objects to the reinstatement of the Assignment of Rents under the Amended Plan.

42.     The Assignments defines "Rents" as the right to collect and receive all of the rents,

income, receipts, revenues, issues and profits now due or which may become due including, but not limited to, minimum rents, additional rents, percentage rents, parking maintenance charges or fees, tax and insurance contributions, proceeds of sale of electricity, gas, chilled and heated water and other utilities and services, deficiency rents, security deposits, and other liquidated damages following default.

43.     On November 2, 2009, this Court signed the Agreed Order Granting Expedited Motion to Compel Accounting, Segregation, and Turnover of Rent Income and Objection to Use of Cash Collateral (the "Rent Order"), ordering that Debtor turnover to VEI all rents or other income received by Debtor derived from the Property since the filing of the Petition and continuing until further order of this Court, that Debtor shall endorse any rent or other income it receives in the form of checks to VEI, and Debtor is prohibited from using rents or other income received by Debtor during the course of its bankruptcy unless otherwise ordered by this Court.

44.     In the Amended Disclosure Statement, Debtor stated that it paid $36,298.24 in January 2010 to timely satisfy in full the property taxes and related charges due for 2009 on the Building, but that the characterization of such payment has not been established at this time. Debtor also disclosed in the Amended Disclosure Statement for Debtor's Plan of Reorganization dated January 4, 2010 that the elevator on the Property of Debtor was in need of repairs totaling approximately $8,000, which Debtor reveals in the Amended Disclosure Statement Debtor has paid, but which was also not characterized as rents in the Amended Disclosure Statement.

45.     Both Debtor's payment of the property taxes totaling $36,298.23 and payment of repairs for the elevator on the Property totaling approximately $8,000 are included within the definition of Rents under the Assignment of Rents, and within the rents or other income ordered to be paid to VEI pursuant to the Rent Order, such that both payments are owned by VEI as rent

payments pursuant to the Assignment of Rents and should have been paid to VEI pursuant to the Assignment of Rents and the Rent Order. Because such payments have not been characterized as rents owed to VEI in the Amended Disclosure Statement and have not been paid to VEI in accordance with the Assignment of Rents and the Rent Order, Debtor has breached the Assignment of Rents and violated the Rent Order. Therefore, such payments must be characterized as rents in the Amended Disclosure Statement and paid to VEI in accordance with the Assignment of Rents and the Rent Order such that Debtor's failure to do so is unfair and inequitable as to VEI and violates applicable bankruptcy law.

d. The Amended Plan Proposes to Reinstate the Guaranties without any Right to Do So.

46. Under the Guaranties, the Guarantors are now obligated to pay the full amount due and unpaid by Debtor under the Parkway Note. Despite this obligation by the Guarantors in the Guaranties, in the Amended Disclosure Statement, Debtor states that it intends to "reinstate" the Guaranties in the Amended Plan without any right to do so. In addition, as stated above, Debtor cannot attempt to reinstate the Guaranties and also attempt to apply the non-default rate to the VEI Claim in the Amended Plan because reinstatement necessarily implies applying the default or maturity interest rate. Thus, VEI objects to the reinstatement of the Guaranties under the Amended Plan as such reinstatement is unfair and inequitable to VEI.

47. Although 11 U.S.C. § 1124 permits a plan to cure any default and to reinstate the maturity of such claim as such maturity existed before the default, a plan may do so only if meets the other requirements of the section in order to leave a class of claims or interests unimpaired and does not expressly permit the plan to reinstate the guaranties after a default by the debtor.

48. In conclusion, the Amended Plan proposed by Debtor is not feasible and is both unfair and inequitable to all creditors, including VEI, such that it is unconfirmable as a matter of law.

## V.  <u>Prayer</u>

WHEREFORE, PREMISES CONSIDERED, Creditor Victor Enterprises, Inc. prays that the Court deny confirmation of Debtor's First Amended Plan of Reorganization or, in the alternative, sustain Victor Enterprises, Inc.'s objections and modify the Amended Plan accordingly, and to grant Victor Enterprises, Inc. such other and further relief, at law or in equity, as the Court may deem just and proper.

Dated: May 6, 2010

William L. Wolf, P.C.
5949 Sherry Lane, Suite 550
Dallas, Texas 75225
(214) 750-1395 (telephone)
(214) 368-1395(facsimile)


By:  */s/ William L. Wolf*
William L. Wolf
State Bar No. 21854500
Craig P. Henderson
State Bar No. 09420410

ATTORNEYS FOR VICTOR
ENTERPRISES, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served upon Debtor's counsel and all other parties who receive ECF filings in this case via electronic means on this 6th day of May 2010, as follows:

Cedar Springs Building Management, Ltd.
3514 Cedar Springs Road
Dallas, TX 75219

Robert Yaquinto, Jr.
Sherman & Yaquinto, LLP
509 N. Montclair Avenue
Dallas, TX 75208
Email: rob@syllp.com

Office of the United States Trustee
1100 Commerce Street
Room 976
Dallas, TX 75242

Laurie Spindler Huffman
Linebarger Goggan Blair & Sampson, LLP
2323 Bryan Street, Suite 1600
Dallas, TX 75201
Email: Laurie.Spindler@publicans.com

George S. Henry
The Law Offices of George S. Henry
4201 Spring Valley Road, Suite 1102
Dallas, TX 75244

Andrew Baka
United States Small Business Administration
4300 Amon Carter Blvd., Suite 114
Fort Worth, Texas 76155

*/s/ William L. Wolf*
William L. Wolf